United States District Court
Southern District of Texas
**ENTERED**
July 20, 2020
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

OTIS EVANS
     Plaintiff,

vs.

U.S. BORDER PATROL AGENTS,[1]
     Defendant.

§
§
§
§
§
§
§

CIV. NO. 7:19-cv-00358

## REPORT AND RECOMMENDATION

Plaintiff Otis Evans (BOP #53352-479) has filed suit under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging violations of his civil rights by a United States Border Patrol agent.[2]  (Dkt. No. 1 at 3.)  At the Court's request, Evans has provided a more definite statement of his claims.  (Dkt. No. 4.)  While initially making allegations against unknown Border Patrol agents, the defendant has been identified as former United States Border Patrol Agent Adrian Castillo.  (Dk. No. 9 at 3.)  The allegation against Agent Castillo is fairly straight-forward:  that Agent Castillo, when arresting Evans on March 12, 2018, utilized excessive force in violation of the Fourth Amendment of the United States Constitution.  Evans proceeds *pro se*, but not *in forma pauperis*.

Agent Castillo has filed a motion to dismiss and/or alternatively for summary judgment (Dkt. No. 16) seeking dismissal of Evans's claims.  In support of the motion, Agent Castillo has provided a video of the encounter, a video statement of Evans taken after the encounter, and a

---

[1] With the identification of Adrian Castillo as the Defendant, the Clerk's Office is advised to update the style of the matter as Otis Evans vs. Adrian Castillo.

[2] Citations to docket entries pertain to this matter unless otherwise noted; page numbers pertain to assigned numbers set forth when documents are filed in PACER.

declaration from an agent concerning Evans's medical records.  (*See* Dkt. Nos. 16-1 to 16-4; Exhibits 4A, 4B.)  Evans has responded by filing an opposition. (Dkt. No. 19.)  In support of his opposition, he has filed 25 pages of medical records from McAllen Medical Center and 27 pages of medical records from Edinburg Regional Medical Center.[3] (Dkt. Nos. 23, 24.)  Agent Castillo has filed a reply. (Dkt. No. 27.)  Evans has also filed a renewed request for appointment of counsel. (Dkt. No. 20.)

On June 12, 2020, the undersigned held a status hearing to address Agent Castillo's motion to dismiss and/or alternatively for summary judgment.  Evans was provided an additional two weeks to file any additional evidence or to modify his answers in the more definite statement.  On June 16, 2020, Evans filed two letter motions.  (*See* Dkt. Nos. 28, 29.)  The first letter motion requests additional discovery.  (Dkt. No. 28.)  In the second letter motion, Evan states that he would like to amend his initial complaint because he does not agree with how the "inmate lawyer" who drafted the complaint "explained [his] case[.]" (Dkt. No. 29.)  Agent Castillo has filed a response, arguing that the two letter motions should be denied, as well as a supplemental notice of authority in support of Castillo's motion to dismiss.  (Dkt. Nos. 30, 31.)

This case has been referred to the undersigned for pretrial management pursuant to 28 U.S.C. § 636(b).  After carefully considering the pleadings, Agent Castillo's motion to dismiss and/or alternatively for summary judgment, Evans's opposition, Agent Castillo's reply, and the record and relevant law, the undersigned recommends that Agent Castillo's motion to dismiss and/or alternatively for summary judgment (Dkt. No. 16) be **GRANTED** and that the complaint

---

[3] The records from Edinburg Regional Medical Center contain records from McAllen Medical Center.  Although Evans was initially taken to the hospital in Edinburg, he was eventually transported to McAllen Medical Center and received his primary care in McAllen on March 13, 2018.  (*See* Dkt. No. 24.)

be **DISMISSED** with prejudice because there is no applicable cause of action under *Bivens*, and,

in the alternative, even assuming there is a cause of action under *Bivens*, the video evidence

establishes that the complaint should be dismissed based on qualified immunity for Agent Castillo.

## I.   BACKGROUND

### A.    The Plaintiff's Allegations[4]

Evans's excessive-force claim is based on his encounter with Agent Castillo, in Agent

Castillo's capacity as a Border Patrol Agent, on March 12, 2018.  On this date, Agent Castillo

encountered Evans traveling north on U.S. Highway 281 in Hidalgo County, Texas.  Based on

Agent Castillo's observation that Evans's vehicle appeared weighed down, Agent Castillo

attempted to conduct a traffic stop.  Evans initially stopped his vehicle, but when Agent Castillo

exited his vehicle to meet with Evans, Evans started driving again in an attempt to avoid

apprehension.  Agent Castillo then followed Evans until he stopped again.  At that time, Evans

attempted to flee on foot, as did several other individuals who were inside Evans's vehicle and

who were believed to be in the country illegally.

In his more definite statement, Evans sets forth his version of what came next:

> I then slowed down on to [the] shoulder and then got on to the grass and came to a
> stop next to a tall fence.  Me and other [individual in vehicle] exit the car, I tried to
> jump over the fence but the officer got there and ordered me to come down.  I did
> just that, He then told me to walk to the rear of car[] I was driving and to face the
> front of [his] patrol unit and said do not resist or he would tazz [sic] me.  I said, I
> will not resist.  He then ordered me to lay on the ground face down.  The officer
> then told me not to move or resist.  The officer then stood over me with [his] right
> foot to my right and [his] left to my left at about my waist.  He then ask me to place
> my left hand behind my back then my right while putting on [his] hand cuffs.  The
> officer then stood to my left side with both feet.  He then with [his] right hand grab
> the link of the [hand]cuff's and with [a] quick jerk lift me up then he came down

---

[4] Unless otherwise noted, the summary of the encounter, excluding the disputed facts, is based on
the Presentence Report filed on November 27, 2018, in Case No. 2:18-cr-00784.  *United States v.
Evans*, Case No. 2:18-cr-00784, Dkt. No. 25 (S.D. Tex., Corpus Christi Div.).  Neither party
disputes the encounter; rather, the parties dispute how the arrest occurred.

with [his] right knee on to my back right under my left shoulder blade. We both heard my ribs crack v[e]ry loud. At that time, I let out a scream of pain. Other officers were arriving at that moment. The officer jump up with a surprised expression on [his] face. I told him loudly you broke my ribs. The other [officers] took hold of him and held him behind [their] backs. I was in great pain and ask many times for his name, but no one would give me his or [theirs].

(Dkt. No. 4 at 1.)

At this point, Evans complained that he was in pain and Agent Castillo called for medical services. Evans was treated and eventually transported to a hospital in McAllen for care and temporary hospitalization. Three additional individuals were found in the trunk of Evans's vehicle. These individuals, along with a woman who was pregnant and unable to flee on foot, were determined to be citizens of another country without permission to be in the United States. A grand jury subsequently returned an indictment in the Southern District of Texas, Corpus Christi Division, in Case No. 2:18-cr-00784, charging Evans in three counts. Evans pleaded guilty to Count One of the indictment, which charged him with conspiracy to transport undocumented aliens on March 12, 2018, and July 20, 2018, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(A)(v)(I), and 1324(a)(1)(B)(i). On February 12, 2019, the Honorable U.S. District Judge Hilda G. Tagle sentenced Evans to 27 months in prison followed by a one-year term of supervised release. *See United States v. Evans*, Case No. 2:18-cr-00784 (S.D. Tex., Corpus Christi Div.). Evans was incarcerated with the Federal Bureau of Prisons until June 30, 2020, when he was released to supervised release. *See Inmate Locator*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 20, 2020).

As a result of Agent Castillo's alleged use of excessive force, Evans claims to have sustained injuries including pain and difficulty in lifting his left arm or placing his hand behind his

back. (Dkt. No. 4 at 2.)  Evans also complains that he has weakness in his left arm and numbness in his hand. (*Id.*)  Evans apparently seeks $250,000.00 in damages.[5]

**B.**   **Defendant's Motion to Dismiss and/or Alternatively for Summary Judgment**

Agent Castillo has filed a motion to dismiss and/or alternatively for summary judgment, arguing that Evans's claim against him should be dismissed.  (Dkt. No. 16.)  First, Agent Castillo argues that a *Bivens* remedy does not apply to the facts presented here. (*Id.* at 14-17.)   Second, Agent Castillo claims that even if a cause of action under *Bivens* is available, the claim against him should be dismissed because he is entitled to qualified immunity. (*Id.* at 9-14.)   Last, Agent Castillo argues that to the extent Evans is asserting any Texas tort claims against him, he is entitled to absolute immunity from such claims under 28 U.S.C. § 2679(b) and under Chapter 86 of the Texas Civil Practice and Remedies Code. (*Id.* at 17-18.)

Evans has filed an opposition to Agent Castillo's motion (Dkt. No. 19), and Agent Castillo has filed a reply to the opposition (Dkt. No. 27) and a notice of supplemental authority in support of motion to dismiss (Dkt. No. 31).

## II.   <u>STANDARDS OF REVIEW</u>

**A.**   **Motion to Dismiss Under Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a claim where a plaintiff fails "to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the

---

[5] The more definite statement does not indicate what damages Evans seeks.  His initial complaint, however, states that he seeks $250,000.00 in damages. (*See* Dkt. No. 1 at 4.)

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The court must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citations and internal quotation marks omitted).

While, under Rule 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while, under Rule 12, a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citations omitted). "The Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the '*factual* allegations' in the complaint[,]" *Smith v. Bank of America, N.A.,* 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014)) (emphasis in original), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson*, 574 U.S. at 11 (citations omitted).

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, documents "attache[d] to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 731 (7th Cir. 1993)). Likewise, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007). However, "[w]hen matters outside the pleadings are presented to the court in connection with a motion under

Rule 12(b)(6), the motion must be treated as a Rule 56 motion for summary judgment and appropriate notice given to the parties." *Turnage v. McConnell Techs.*, 671 F. App'x 307, 309 (5th Cir. 2016) (per curiam); *see also Brown v. P.S. & Sons Painting, Inc.*, 680 F.2d 1111, 1112 n.1 (5th Cir. 1982) (explaining that FRCP 12 "specifically provides for the conversion" of a motion to dismiss under Rule 12 to a motion for summary judgment under "Rule 56 when matters outside the pleadings are presented to the court").

**B.      Motion for Summary Judgment Under Rule 56**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019).

"A fact issue is material if its resolution could affect the outcome of the action." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015) (citation and internal quotation marks omitted).  "Factual disputes that are irrelevant or unnecessary will not be counted." *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham[.]" *Hudspeth v. City of Shreveport*, 270 F. App'x 332, 334 (5th Cir. 2008) (quoting *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001)).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016) (quoting *Anderson*, 477 U.S. at 248). The moving party, however, "need not negate the elements of the nonmovant's case." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

Once a proper showing has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322-23. All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in its favor. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (citing *Anderson*, 477 U.S. at 255). When videotape evidence is available, however, a court should not adopt the plaintiff's version of the facts if the plaintiff's story "is blatantly contradicted by the [video] record, so that no reasonable jury could believe it[.]" *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) ("Although courts review evidence in the light most favorable to the nonmoving party, they give greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene.") (citing *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)).

Evans proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' ... and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, *pro se* litigants are still required to explain or

identify specific facts in support of their claims. *See United States v. Stanford*, 805 F.3d 557, 572 (5th Cir. 2015) (citing *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993)).

## C.    Qualified Immunity

Agent Castillo has invoked the defense of qualified immunity, which protects "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted). Qualified immunity is "a defense against an individual capacity lawsuit[,]" *Sanders-Burns v. City of Plano*, 594 F.3d 366, 378 (5th Cir. 2010), and it "protects all but the plainly incompetent or those who knowingly violated the law." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation and quotation marks omitted).

"At summary judgment, it is the plaintiff's burden to rebut a claim of qualified immunity once the defendant has properly raised it in good faith." *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016) (quoting *Cole v. Carson*, 802 F.3d 752, 757 (5th Cir. 2015)). "A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (citations and quotation marks omitted).

To rebut the defense once invoked, a plaintiff must: (1) properly allege or show that the defendant's actions violated the plaintiff's constitutional rights; and (2) that those rights were clearly established at the time of the defendant's actions. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 136 S. Ct. at 308 (citation and quotation marks omitted). There need not be a case directly on point, but

"existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citation and quotation marks omitted).  The two steps of the qualified immunity inquiry may be performed in any order.  *Pearson*, 555 U.S. at 236.  Moreover, "a plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (quoting *Curran v. Aleshire*, 800 F.3d 656, 664 (5th Cir. 2015)).

### III.   THE PARTIES' SUMMARY JUDGMENT EVIDENCE

In support of the motion to dismiss and/or alternatively for summary judgment, Agent Castillo has provided, among other evidence, a video of the encounter.  (*See* Dkt. Nos. 16-1 to 16-4; Exhibits 4A, 4B.)  Evans, for his part, has provided his medical records from his hospital admission directly following the encounter.  (*See* Dkt. Nos. 23, 24.)

**A.     Video of the Encounter**

A review of the video submitted by Agent Castillo (Ex. 4A) verifies the initial encounter that took place on March 12, 2018, which shows Evans speeding away to avoid arrest.  After driving a short distance, Evans stops his vehicle, runs away from the vehicle, and then attempts to climb over a fence to avoid arrest.  Agent Castillo grabs Evans and attempts to pull him off the fence.  Evans resists for a number of seconds, appearing to refuse to let go of the fence.  Agent Castillo is eventually successful in pulling Evans off the fence, and Evans falls to the ground on his hands and knees.  Agent Castillo then struggles to hand-cuff Evans and Evans ends up laying flat on the ground.  In an attempt to handcuff Evans, Agent Castillo straddles him and utilizes his knees to gain control of Evans prior to handcuffing him.  Agent Castillo does eventually bring both of Evans's arms behind his back to handcuff him.  Once handcuffed, Evans is rolled over and sits upright.  Evans is then heard complaining of pain and Agent Castillo calls for medical assistance.

Agent Castillo then goes to his vehicle to turn off the video, which is mounted on the dashboard of his Border Patrol vehicle.

## B.    Plaintiff's Medical Records

Evans claims that as a result of the encounter, he has pain and numbness in his left arm and hand and has difficulty in lifting up his arm above his shoulder. (Dkt. No. 4 at 2.)  Evans has submitted his medical records. After his arrest, Evans was initially taken to Edinburg Regional Hospital before being transported to McAllen Medical Center for treatment. A review of Evans's medical records show that he had a "right subdural hematoma" (*see* Dkt. No. 24-1 at 4-5, 20; Dkt. No. 23-1 at 10), "swelling to the right wrist" (*see* Dkt. No. 24-1 at 14), and a "suggestion of intraosseous hemangiomata involving a few thoracolumbar vertebrae. No definite fracture" (*see* Dkt. No. 24-1 at 17). There is not, however, a diagnosis for any broken bones, including cracked ribs. (*See* Dkt. No. 23-1 at 8). There is no indication that Evans had any follow up medical appointments concerning his injuries.

## IV.    ANALYSIS

### A.    Existence of a *Bivens* Remedy

Agent Castillo argues that a *Bivens* remedy is not available under the facts of this case.[6] (Dkt. No. 16 at 14-17.)  Specifically, he asserts that special factors—including Evans's potential avenue for suit under the Federal Tort Claims Act and the fact that the complaint stems from an incident arising out of border security operations—counsel against extending a *Bivens* action to this new context.  (*Id.*)  In his opposition, Evans does not make any argument regarding the existence of a *Bivens* remedy for his case.

---

[6] Evans's more definite statement makes clear that his claim is solely against an individual federal officer—Agent Castillo—acting within his official capacity.  Accordingly, Evans's claim is correctly considered under the framework of *Bivens*.

11

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized an implied cause of action for damages against federal narcotics officers for violating the Fourth Amendment's prohibition against unreasonable searches and seizures. A *Bivens* action is "the federal analog to suits brought against state officials under …42 U.S.C. § 1983." *Iqbal*, 556 U.S. at 675-76; *see also Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999) ("A *Bivens* action is analogous to an action under § 1983—the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials."). To state a valid cause of action under *Bivens*, a plaintiff must allege that an individual acting under federal law deprived him of a right secured by the United States Constitution. *See Bivens*, 403 U.S. at 395-97.

The Supreme Court has been extremely wary of extending *Bivens* claims into new contexts. *See Ziglar v. Abassi*, 137 S. Ct. 1843, 1857 (2017) ("[T]he [Supreme] Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity.") (citing *Iqbal*, 556 U.S. at 675). In fact, since *Bivens* itself, the Supreme Court has recognized *Bivens* remedies in only two other contexts. In *Davis v. Passman*, the Supreme Court held that the Fifth Amendment Due Process Clause gave an administrative assistant who sued a Congressman for firing her because she was a woman a damages remedy for gender discrimination. 442 U.S. 228, 248-49 (1979). And in *Carlson v. Green*, the Supreme Court held that the Eighth Amendment's cruel and unusual punishments clause gave a prisoner's estate that sued federal jailers for failing to treat the prisoner's asthma a damages remedy for failing to provide the prisoner adequate medical treatment. 446 U.S. 14, 19 (1980). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855.

12

A court faced with a *Bivens* claim must undergo the two-part analysis laid out in *Ziglar*. "First, the court must decide if the case before it involves a 'new context' that is distinct from *Bivens*, *Davis*, and *Carlson*." *Canada v. United States*, 950 F.3d 299, 306 (5th Cir. 2020) (citing *Ziglar*, 137 S. Ct. at 1859). "If so, the court must then assess whether there are 'special factors' counselling hesitation to extending a *Bivens* claim to this context." *Canada*, 950 F.3d at 306 (citing *Ziglar*, 137 S. Ct. at 1857). The Court will consider each of these questions below.

    1.    <u>"New Context" That is Distinct from *Bivens*, *Davis*, and *Carlson*</u>

The first question is whether Evans's claim "involves a 'new context' that is distinct from *Bivens*, *Davis*, and *Carlson*." *Canada*, 950 F.3d at 306 (citing *Ziglar*, 137 S. Ct. at 1859). As discussed above, Evans is claiming that a Border Patrol agent used excessive force during his arrest when the agent, after handcuffing him, "grabbed the link of the [hand]cuffs and with [a] quick jerk[,] lift[ed] [him] up and then…came down with [the agent's] right knee on [Evans's] back right under [Evans's] left shoulder blade." (Dkt. No. 4 at 1.) The Supreme Court has made clear that the proper analysis for a claim such as Evans's claim is under the Fourth Amendment: "Where…the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment[.]" *Graham v. Connor*, 490 U.S. 386, 394 (1989).

Agent Castillo argues that Evans's claim is novel and presents a new context for application of *Bivens*. (Dkt. No. 16 at 15-16.) "The proper test for determining whether a case presents a new *Bivens* context is whether it is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court." *Canada*, 950 F.3d at 307 (internal quotation marks omitted) (quoting *Ziglar*, 137 S. Ct. at 1859). "A meaningful difference may include the Constitutional right at issue, the statutory or other legal mandate under which the officer was operating, or the presence of

potential special factors that previous *Bivens* cases did not consider." *Canada*, 950 F.3d at 307

(citing *Ziglar*, 137 S. Ct. at 1860). Additionally, the Supreme Court has given a non-exhaustive

list of "differences that are meaningful enough to make a given context a new one[.]" *Ziglar*, 137

S. Ct. at 1859-60. A case might differ in a meaningful way because of:

> [1] the rank of the officers involved; [2] the constitutional right at issue; [3] the
> generality or specificity of the official action; [4] the extent of judicial guidance
> as to how an officer should respond to the problem or emergency to be confronted; [5]
> the statutory or other legal mandate under which the officer was operating; [6] the
> risk of disruptive intrusion by the Judiciary into the functioning of other branches;
> or [7] the presence of potential special factors that previous *Bivens* cases did not
> consider.

*Id.* at 1860.

The claim presented by Evans most closely resembles the claim brought in *Bivens* itself.

In *Bivens*, the plaintiff argued that his "arrest and search were effected without a warrant, and that

unreasonable force was employed in making the arrest[.]" *Bivens*, 403 U.S. at 389. The Supreme

Court analyzed the claim under the Fourth Amendment and its conclusion was clear: "[T]hat

damages may be obtained for injuries consequent upon a violation of the Fourth Amendment by

federal officials[.]" Id. at 395. Still, this similarity is not enough.

In *Hernandez v. Mesa*, the Supreme Court considered whether a Fourth Amendment claim

against Border Patrol agents who shot and killed a Mexican citizen who was fleeing arrest by the

agents and was on Mexican soil at the time the shots were fired presented a new *Bivens* context.

140 S. Ct. 735, 740 (2020). Like Evans's claim, *Hernandez* concerned Fourth Amendment claims

against Border Patrol agents. In holding that the claim did present a new context for *Bivens*, the

Court differentiated the circumstances surrounding the claim in *Hernandez*—which it

characterized as a "cross-border shooting claim[]"—from that in *Bivens*, stressing that *Bivens*

"concerned an allegedly unconstitutional arrest and search carried out in New York City[.]" *Id.* at

744. The Court stressed that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Id.* at 743.

Similarly, the facts presented by Evans are distinguishable enough that it falls outside of the context of *Bivens*. The agent involved in the present case worked for U.S. Border Patrol, an agency with differing duties and concerns than that of the former Federal Bureau of Narcotics. Furthermore, the actions at issue in *Bivens* were predicated on allegations of a warrantless search and seizure occurring at a residence, unlike the vehicle stop initiated by Agent Castillo. When a claim involves different conduct by different officers from a different agency, courts are hesitant to extend *Bivens* to a new Fourth Amendment context. *See e.g.*, *Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) (refusing to extend *Bivens* to a new Fourth Amendment context because the claim "involve[d] different conduct by different officers from a different agency"); *Butler v. Hesch*, No. 1:16-cv-1540, 2020 WL 1332476, at *12 (N.D.N.Y. Mar. 23, 2020) (finding that plaintiff's Fourth Amendment claim presented a new context under *Bivens* when the claim "involves different conduct by different officers from a different federal agency").

Accordingly, the undersigned concludes that Evans's claim presents a new context under *Bivens*.

2.    Special Factors Counselling Hesitation

If a court finds that a case involves a new context for *Bivens*, "the court must then assess whether there are 'special factors' counselling hesitation to extending a *Bivens* claim to this context." *Canada*, 950 F.3d at 306 (citing *Ziglar*, 137 S. Ct. at 1857). "A special factor is a sound reason to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Canada*, 950 F.3d at 309 (citing *Ziglar*,

137 S. Ct. at 1858).  Here, the court's focus should be "on maintaining the separation of powers: 'separation-of-powers principles are or should be center to the analysis.'"  *Canada*, 950 F.3d at 309 (quoting *Hernandez v. Mesa*, 885 F.3d 811, 818 (5th Cir. 2018)).  "If any special factors do exist, then courts must refrain from creating an implied cause of action in that case." *Canada*, 950 F.3d at 309 (citations and internal quotation marks omitted).  The threshold for if a factor counsels hesitation "is remarkably low." *Id.*

The case presented by Evans gives rise to special factors that counsel hesitation.  First, as laid out in *Hernandez*, regulating conduct of Border Patrol agents within U.S. Customs and Border Protection "unquestionably has national security implications, [therefore,] the risk of undermining border security provides reason to hesitate before extending *Bivens* into this field." *Hernandez*, 140 S. Ct. at 747 (citations omitted).  Moreover, and as argued by Agent Castillo, a possible alternative remedy exists in the Federal Tort Claims Act ("FTCA").  Congress enacted the FTCA as a limited waiver of the federal government's immunity from tort lawsuits, allowing plaintiffs to sue the federal government "for money damages...for...personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."[7] 28 U.S.C. § 1346(b)(1).  "[I]f Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing

---

[7] As noted by the Government in the Advisory filed on December 19, 2019, if an individual wishes to hold the United States liable for the actions of a current or former employee under the FTCA, he must first submit an administrative claim with the federal agency whose employee caused the alleged harm to the claimant, prior to filing suit in federal court. *See* 28 U.S.C. § 2675(a); (Dkt No. 9 at 4-5.)

reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Ziglar*, 137 S. Ct. at 1858 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

Finally, whether to expand *Bivens* is essentially an issue of separation of powers. "When a party seeks to assert an implied cause of action under the Constitution itself, separation of powers principles are or should be central to the analysis. The question is whether Congress or the courts should decide to authorize a damages suit. Most often [the answer] will be Congress[.]." *Ziglar*, 137 S. Ct. at 1857). In *Tun-Cos v. Perrotte*, the Fourth Circuit declined to extend *Bivens* to the plaintiff's claims "against ICE agents for their allegedly wrongful conduct when enforcing the [Immigration and Nationality Act, or] INA." 922 F.3d 514, 522 (4th Cir. 2019). The result should be no different in this context involving a U.S. Border Patrol agent's enforcement of criminal immigration laws.[8]

In sum, the unique role of U.S. Border Patrol, the availability of an alternative process for a remedy, and the principles of separation-of-powers, present special factors that counsel hesitation for extending *Bivens* to a new context. Because *Bivens* should not be extended to the facts of this case, Evans has failed "to state a claim upon which relief can be granted" and this case could be dismissed on this ground alone. *See* Fed. R. Civ. P. 12(b)(6). However, even if *Bivens* did supply a remedy for Evans, the claim would be subject to summary judgment dismissal for the reasons discussed below.

---

[8] The events from March 12, 2018, led to a conviction for conspiracy to transport undocumented aliens. (*See United States v. Evans*, Case No. 2:18-cr-00784, Dkt. No. 35 (S.D. Tex., Corpus Christi Div.).) Although Border Patrol agents have authority to make a stop "on the basis of reasonable suspicion of any criminal activity, and are not limited to suspicion of immigration laws," *United States v. Perkins*, 352 F.3d 198, 200 (5th Cir. 2003), their primary role is enforcement of immigration laws. *See, e.g., Muniz-Muniz v. United States Border Patrol*, 869 F.3d 442, 443 (6th Cir. 2017) (explaining that the "Border Patrol's mission includes enforcing the Nation's immigration laws"); *United States v. Perkins*, 166 F. Supp. 2d 1116, 1121 (W.D. Tex. 2001) ("[T]he primary duty of the Border Patrol is the enforcement of immigration laws.").

**B.      Even if a *Bivens* Remedy is Available, Such Claim is Barred by Qualified Immunity**

In the alternative, even if a *Bivens* remedy were available, qualified immunity is warranted based on the facts of this case. "The doctrine of qualified immunity, which operates the same under both § 1983 and *Bivens*, 'protects public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hernandez v. United States*, 757 F.3d 249, 260 (5th Cir. 2014) (quoting *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011)). "In assessing qualified immunity, we determine '(1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct.'" *Hernandez*, 757 F.3d at 260 (quoting *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013)).

1.      Qualified Immunity Step 1:  Violation of a Constitutional Right

Step one of the qualified immunity analysis requires the Court to determine if the plaintiff has met his burden at the summary judgment stage to show that excessive force was used against him by the defendant in violation of his constitutional rights. "To prevail on an excessive-force claim, a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). "[A]n injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible—that is, objectively unreasonable under the circumstances." *Collier v. Montgomery*, 569 F.3d 214, 218 (5th Cir. 2009) (quoting *Bush v. Strain,* 513 F.3d 492, 501 (5th Cir. 2008)). "The objective reasonableness of the force, in turn, depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible." *Collier*, 569 F.3d at 218-19

(quoting *Bush*, 513 F.3d at 501). "The test for reasonableness must consider 'whether the suspect poses an immediate threat to the safety of the officers or others, and *whether he is actively resisting arrest* or attempting to evade arrest by flight.'" *Collier*, 569 F.3d at 219 (emphasis in original) (quoting *Graham*, 490 U.S. at 396).

Regarding the first element, an injury need not be "significant" but "must be more than *de minimis.*" *Tarver*, 410 F.3d at 752. Here, Evans claims that as a result of the encounter, he has pain and numbness in his left arm and hand and has difficulty in lifting up his arm above his shoulder. (Dkt. No. 4 at 2.) A review of Evans's medical records show that he had a "right subdural hematoma" (*see* Dkt. No. 24-1 at 4-5, 20; Dkt. No. 23-1 at 10), "swelling to the right wrist" (*see* Dkt. No. 24-1 at 14), and a "suggestion of intraosseous hemangiomata involving a few thoracolumbar vertebrae. No definite fracture" (*see* Dkt. No. 24-1 at 17). There is not, however, a diagnosis for broken ribs, or any other broken bones for that matter. (*See* Dkt. No. 23-1 at 8.) Evans was released after several hours at the hospital and sent home with a prescription for acetaminophen.[9] (Dkt. No. 23-1 at 17.) Evans's medical records also reflect that when he was released, despite having a subdural hematoma, there was no request for any additional follow-up surgery. (*See generally* Dkt. Nos. 23, 24.)

This method of discharge and lack of surgery seem to indicate a *de minimis* injury; however, the undersigned is not in the position, at this stage, to judge whether a subdural hematoma and/or a "suggestion of intraosseous hemangiomata involving a few thoracolumbar vertebrae. No definite fracture" constitute more than a *de minimis* injury. Nor is the undersigned in a position to determine whether or not the encounter led to all of the injuries complained of in the medical

---

[9] Acetaminophen is essentially generic Tylenol. *See* Acetaminophen, Drugs.com, https://www.drugs.com/acetaminophen.html (last visited on July 20, 2020).

records; as noted by Agent Castillo, the medical records submitted by Evans reflect that he may have had the cut on his forehead prior to the encounter on March 12, 2018. (Dkt. No. 23-1 at 21; Dkt. No. 27 at 2.)  Unfortunately for Evans, however, this matter does not turn on the injuries he sustained or the cause of those injuries, but on whether the force in question was excessive and unreasonable.

As shown by the video of the encounter submitted by Agent Castillo, Agent Castillo pulled Evans from a fence he was trying to climb over in order to avoid apprehension.  Once Evans was on the ground, Agent Castillo straddled Evans and utilized his knees to try to subdue Evans until Evans was handcuffed.  Given Evans's attempt to avoid apprehension by motor vehicle and then on foot, Agent Castillo's decision to place himself on top of Evans and utilize his knees to control and handcuff Evans is not unreasonable.  Once Evans was handcuffed, Agent Castillo turned Evans over and allowed him to sit in an upright position.  Agent Castillo then called for medical assistance because Evans complained that he was in pain.  None of Agent Castillo's actions were excessive or unreasonable.  *See Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (finding that the use of a takedown maneuver was reasonable given that the arrestee was failing to follow officer's verbal commands); *Alford v. City of Wiggins*, No. 1:16cv19-LG-RHW, 2017 WL 923406, at *4 (S.D. Miss. Mar. 8, 2017) (finding that officer bringing arrestee "to the ground in [a] controlled manner" when arrestee was attempting to escape officer's grasp was an objectively reasonable use of force).

Agent Castillo responded accordingly to Evans's resistance, and once said resistance ceased, Agent Castillo did not use any additional force upon Evans.  Because Evans cannot show that excessive force was used—or that the force used was excessive or unreasonable—and, therefore, that a constitutional right was violated, Agent Castillo is entitled to qualified immunity.

Although the Court need not examine the second prong of the qualified immunity analysis because Evans has not met his burden regarding the first prong, Agent Castillo is clearly entitled to qualified immunity based on the second prong, as discussed below.

2.      Qualified Immunity Step Two:  Right was Clearly Established

In excessive force cases, "the second prong of the [qualified immunity] analysis is better understood as two separate inquiries: [1] whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, [2] whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Tarver*, 410 F.3d at 750 (citations and quotations omitted). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Id.*

The Fourth Amendment right to be free from excessive force during a seizure is clearly established and was at the time of Evans's arrest. *Poole*, 691 F.3d at 627; *see also Graham*, 490 U.S. at 388 (holding that the Fourth Amendment "governs a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person.")   However, this "abstract rule[] gives officials little practical guidance as to the legality of particular conduct.  Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be 'on notice that their conduct is unlawful.'" *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).   As a result, whether the actions of Agent Castillo were objectively unreasonable requires detailed analysis of the law at the time of Evans's arrest.

a.      *Clearly Established Law*

The Fifth Circuit has made clear that police are "entitled only to 'measured and ascending responses' to the action of a suspect, 'calibrated to the physical and verbal resistance' shown by

the suspect." *Chacon v. Copeland*, 577 F. App'x 355, 362 (5th Cir. 2014) (citing *Newman v. Guedry*, 703 F.3d 757, 767 (5th Cir. 2012). The Fifth Circuit has held that resistance or flight risk are critical factors when determining what amount of force an officer may use to subdue a suspect. In *Poole*, the Fifth Circuit found that the use of a taser and takedown maneuvers were objectively reasonable when an individual who had been suspected of drunk driving was not following the officer's commands to turn around and give up his right arm. 691 F.3d at 629. On the other hand, the Fifth Circuit has found that violently slamming, choking, or punching a suspect in the course of an arrest is excessive if the arrestee was not resisting arrest. *See Darden v. City of Fort Worth,* 880 F.3d 722, 732-33 (5th Cir. 2018). In short, it is established that at the time of Evans's arrest, that a law enforcement officer can use force to secure the arrest of an individual and, when warranted, that force can be greater at times when said individual resists arrest versus when an individual cooperates.

###### b.    *Reasonableness of Actions*

Here, Evans was clearly evading arrest and resisting Officer Castillo's attempts to pull him off the fence. Agent Castillo had no choice but to grab Evans and pull him off the fence. Clearly established law would have even allowed the use of a taser, but no such device was used. *See Poole*, 691 F.3d at 629. Agent Castillo removed Evans from the fence with no unreasonable amount of force and took him to the ground. Once on the ground, Agent Castillo subdued Evans by positioning himself on Evans's back until handcuffs were in place. In light of the law at the time of Evans's arrest and given the amount of resistance Evans exhibited, no reasonable officer would have perceived Agent Castillo's actions to be unreasonable.

When qualified immunity is asserted, Evans, as the plaintiff, has the burden to produce admissible evidence that raises a genuine issue of material fact on whether Agent Castillo's actions

were objectively unreasonable under the circumstances, in view of the existing law and facts known to him. Evans has not met his burden; the video of his arrest negates Evans's claim of constitutionally impermissible force.[10] Agent Castillo is therefore entitled to the defense of qualified immunity, and summary judgment should be granted in his favor as a matter of law.[11]

## C. Plaintiff's Pending Motions

### 1. Request for Counsel

Evans has re-urged his request for appointment of counsel due to the complexity of the case and his inability to present any further discovery. (Dkt. No. 20.) As set forth in the order

---

[10] In his opposition, Evans argues that the video submitted by Agent Castillo is not an accurate depiction of the encounter because it has "many discrepancies," including Evans's belief that the encounter occurred during daylight hours and his recollection that the "position of the vehicles" was different than shown in the video. (Dkt. No. 19 at 4.) Evans offers nothing in support of his contention that the video has been edited, aside from the allegation itself. Agent Castillo, on the other hand, has submitted his own statement under oath that the video is a complete copy of the recording made on March 12, 2018, and has not been edited or modified from the original. (Dkt. No. 16-1 at 1.) Significantly, Evans does not dispute that the video is a recording of the encounter that occurred between himself and Agent Castillo on March 12, 2018. In fact, on another page of his opposition, he admits that he is the subject of the video. (Dkt. No. 19 at 3.) As discussed *supra* Part II.C., "a plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (quoting *Curran v. Aleshire*, 800 F.3d 656, 664 (5th Cir. 2015)).

[11] In his motion to dismiss and/or alternatively for summary judgment, Agent Castillo argues that to the extent Evans is attempting to assert a Texas tort claim, he is precluded from bringing such claim by Chapter 86 of the Texas Civil Practice and Remedies Code and by 28 U.S.C. § 2679(b)(1). Evans has not responded to this argument. In any event, it appears that Agent Castillo is correct that the Texas Remedies and Practice Code prohibits Evans from recovering damages in a Texas tort suit from injuries stemming from his arrest because Evans was ultimately convicted of the events that led to his arrest on March 12, 2018. *See* Tex. Civ. Prac. & Rem. Code § 86.002(a) ("A claimant who has been convicted of a felony or misdemeanor may not recover damages for an injury sustained during the commission of the felony or misdemeanor if the injury would not have been sustained but for the commission of the felony or misdemeanor."); *Yarbrough v. Home Depot, Inc.*, No. 3:08-CV-609-G, 2008 WL 3895389, at *2 (N.D. Tex. Aug. 15, 2008) ("[Plaintiff] may not recover damages for an injury he sustained during the commission of the felony for which he has been convicted.") (citing Tex. Civ. Prac. & Rem. Code § 86.002(a)).

denying the first request, a court may appoint counsel for an indigent litigant pursuant to 28 U.S.C.

§ 1915(e)(1), "but there is no automatic right to appointment of counsel in a civil rights case[.]"

*Castro Romero v. Becken*, 256 F.3d 349, 353-54 (5th Cir. 2001) (citation omitted). In determining

whether to appoint counsel, "the district court considers the type and complexity of the case, the

litigant's ability to investigate and present the case, and the level of skill required to present the

evidence." *Id.* at 354 (citation omitted). Further, the district court "is not required to appoint

counsel for an indigent plaintiff asserting a [civil rights claim] unless the case presents exceptional

circumstances." *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982) (citation omitted).

Evans has been able to present his civil rights claim clearly and diligently before the Court.

Evans, in response to a request from the Court, timely filed his response to the order for more

definite statement. (Dkt. No. 4.) Evans filed coherent responses to Defendant's Motion to Dismiss

and/or Alternatively for Summary Judgment. (Dkt. No. 19.) Evans secured and filed his medical

records for the undersigned's consideration. (Dkt. Nos. 23, 24.) Evans represented himself at the

status hearing in this matter and followed-up with additional letter motions summarizing his

arguments. (Dkt. Nos. 28, 29.) Overall, Evans has been able to litigate his claim in federal court

without the assistance of counsel. *See Schneider v. Kaelin*, 569 F. App'x 277, 281 (5th Cir. 2014)

(per curiam) (holding that trial court's denial of counsel was not an abuse of discretion as plaintiff

was able to "litigate his garden-variety excess force claim through to summary judgment"). For

these reasons, the second request for appointment of counsel (Dkt. No. 20) should be denied.

   2.   Request for Additional Discovery

Evans's request for additional discovery (Dkt. No. 28) should also be denied. Evans

requests that the video of the encounter submitted by Agent Castillo "be authenticated by a

professional in that field" and he requests production of the "records of maintenance and upgrades

on the patrol vehicle used that day" by Agent Castillo. (*Id.* at 1.)  Evans also claims that Agent

Castillo "has changed his story 2 to 3 times" because, according to Evans, the encounter as set

forth in the PSR in Evans's underlying criminal case differs from Agent Castillo's version of the

encounter put forth in his motion to dismiss and/or alternatively for summary judgment.

Construed liberally, Evans's request for additional discovery is one made under Federal

Rule of Civil Procedure 56(d).  Pursuant to Rule 56(d), a movant "must demonstrate (1) why he

needs additional discovery, and (2) how the additional discovery will likely create a genuine issue

of material fact."  *Chenevert v. Springer*, 431 F. App'x 284, 286 (5th Cir. 2011) (per curiam)

(citing *Stearns Airport Equip Co. v. FMC Corp.*, 170 F.3d 518, 534-35 (5th Cir. 1999)).  Evans

fails to demonstrate either requirement here—he provides no reason as to why he believes the

video should be "authenticated" or why he needs the maintenance records for Agent Castillo's

patrol car; nor does he state how additional discovery will likely create a genuine issue of material

fact.  To the extent Evans is claiming that the video has been altered in some respect, he provides

no reasons or argument for this assertion, besides the fact that his memory of the encounter differs

from what is shown on the video.  *See supra* note 10.  Finally, Evans's contention that Agent

Castillo has "changed his story 2 to 3 times" is without merit.  The offense conduct as described

in the PSR does not differ in any material way from the facts alleged by Agent Castillo in his

motion to dismiss.[12]   For these reasons, Evans's request for additional discovery (Dkt. No. 28)

should be denied.

3.   <u>Motion to Amend Complaint</u>

At the hearing on June 12, 2020, Evans stated that his original complaint was drafted by a

jailhouse lawyer, and that the jailhouse lawyer told Evans that he had to draft the complaint in a

---

[12] Furthermore, the PSR was drafted by a U.S. Probation Officer, not Agent Castillo.

certain way so that it would "survive in court." Evans then stated that his response to the order for more definite statement describing the encounter was exactly as he recalled the encounter and that he did not need to clarify anything in the more definite statement. At the end of the hearing, the undersigned told Evans that he would give him two weeks to file any additional evidence or to modify any of his answers to the more definite statement.

Evans has filed a one-page request to amend his complaint. (Dkt. No. 29.) Evans states that he would like to amend his complaint because the complaint was "made out by a so-called inmate lawyer" and he does "not agree with the way [the inmate lawyer] explained my case[.]" (Dkt. No. 29.) Evans did not submit a proposed amended complaint with the motion, nor did he describe any additional factual allegations or theories of recovery that he wishes to assert. In his opposition to the motion, Agent Castillo argues that any allegations submitted in an amended pleading would not change the outcome that is mandated by the video of the encounter and the medical evidence, thus making any amended complaint futile. (Dkt. No. 30.) Agent Castillo further argues that any amended pleading will lead to an unnecessary delay in the resolution of the claim, and that since qualified immunity is also a defense to the costs and burdens of litigation, a defendant entitled to qualified immunity should be dismissed from the case as early as possible. The undersigned agrees with Agent Castillo that leave to amend should be denied.

A request for leave to amend is governed by Rule 15(a)(2) of the Federal Rules of Civil Procedure. Under that provision, leave sought should be "freely give[n]…when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend, however, "is in no way automatic," and whether to grant or deny leave is left to the discretion of the trial court. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). When deciding such a request, the court "may consider a variety of factors including 'undue delay, bad faith or dilatory motive

on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party..., [and] futility of the amendment.'" *Marucci Sports, L.L.C.*, 751 F.3d at 378 (quoting *Mayeaux v. La. Health Serv. and Indem. Co.*, 376 F.3d 420, 426 (5th Cir. 2004)). "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Marucci Sports, L.L.C.*, 751 F.3d at 379.

Most significantly, Evans's motion to amend should be denied because any amendment proposed by Evans would be futile. The fact that Evans lacks a *Bivens* remedy is fatal to his claim, and his complaint is subject to dismissal under Rule 12(b)(6) on this basis alone. *See Maria S. v. Garza*, 912 F.3d 778, 783-85 (5th Cir. 2019) (holding that district court erred as a matter of law when it failed to dismiss plaintiff's claim under Rule 12(b)(6) when such claim lacked a *Bivens* remedy); *Arita v. United States*, No. 7:19-cv-288, 2020 WL 3542256, at *12-15 (S.D. Tex., June 30, 2020) (granting Rule 12(b)(6) motion to dismiss because there was no *Bivens* remedy available to plaintiffs); *Lopez-Flores v. Ibarra*, No. 1:17-cv-105, 2018 WL 6579180, at *7 (S.D. Tex. Jan. 22, 2018) (observing that "[i]n order for Plaintiff's claims to survive Defendants' Motion to Dismiss [under Rule 12(b)(6)], said claims need to be cognizable under *Bivens* and its progeny"). Aside from *Bivens*, Evans has not suggested that he is entitled to relief under any other cause of action or theory of recovery.[13] As argued by Agent Castillo, since he is entitled to qualified immunity, an amended pleading would also cause him undue prejudice and would further delay resolution of the case because he would then have to file another motion to dismiss. *See Bailey v. Mansfield Indep. Sch. Dist.*, 425 F. Supp. 3d 696, 728 (N.D. Tex. 2019) (denying motion to amend

---

[13] The undersigned notes that even if Evans had attempted to raise a new cause of action in a proposed amended complaint, he would face a more difficult hurdle because a court "should more carefully scrutinize a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment." *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999).

because "allowing another amended pleading would result in undue prejudice to [defendant], who would be confronted with the need to file another motion to dismiss, further delaying resolution of certain issues in this case, and defeating the purpose behind qualified immunity").

Furthermore, Evans has not made any attempt to explain his delay in requesting leave to amend. A "[p]laintiff bears the burden of showing that delay was due to oversight, inadvertence or excusable neglect[.]" *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999). Evans has not met his burden here. Nor has Evans explained why amendment is appropriate or necessary. *See In re Engle Cases*, 767 F.3d 1082, 1119 n.37 (11th Cir. 2014) ("The party seeking leave to amend under Rule 15 bears the burden of establishing his entitlement to it[.]"); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1485 (3d ed. Apr. 2020 update) ("A motion to amend under Rule 15(a), as is true of motions generally, is subject to the requirements of Rule 7(b), and must set forth with particularity the relief or order requested and the grounds supporting the application.").

Accordingly, for the reasons discussed above, Evans's request to amend his complaint (Dkt. No. 29) should be denied.[14]

---

[14] Finally, to the extent that Evans's motion to amend is an attempt to "formalize" his argument at the hearing on June 12, 2020, that the more definite statement sets forth his allegations exactly as he recalls, such a request for leave to treat a more definite statement as an amended or supplemental version of the original complaint is unnecessary because a *pro se* prisoner's response to a court's questionnaire or order for more definite statement is automatically considered part of the complaint. *See Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976) ("Because the answers to the questionnaire will effectively amplify the original allegations in the prisoner's complaint, cf. Rule 15(a), F. R. Civ. P., they are an integral part of that complaint and not a separate, independent pleading."); *see also Requena-Villareal v. Almeida*, No. 1:17-cv-143, 2019 WL 1509141, at *3 (S.D. Tex. March 7, 2019) (noting that a prisoner's response to an order for more definite statement is "not a separate, independent pleading," but "a necessary pleading auxiliary . . . in order that the court may assess the factual and legal bases of the claim[s] asserted.") (quoting *Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976)). Accordingly, Evans's motion to amend could be denied as unnecessary on this basis as well.

## V.   CONCLUSION

### *Recommended Disposition*

After careful review of the record and relevant law, the undersigned recommends that the Motion to Dismiss and/or Alternatively for Summary Judgment (Dkt. No. 16) filed by Agent Adrian Castillo be **GRANTED**, that Plaintiff Otis Evans's claims (Dkt. Nos. 1, 4) be **DISMISSED with prejudice**, that Evans's request for counsel (Dkt. No. 20) be **DENIED**, that Evans's request for additional discovery (Dkt. No. 28) be **DENIED**, and that Evans's motion to amend the complaint (Dkt. No. 29) be **DENIED**.

### *Notice to the Parties*

The Clerk shall send copies of this Report and Recommendation to Plaintiff, who has fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure.   Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**DONE** at McAllen, Texas, this 20th day of July, 2020.

Juan F. Alanis
United States Magistrate Judge